UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL MOORING,

    Petitioner,

    v.

J. WALKER, Warden,

    Respondent.

                                    /

No. C 07-5013 SI (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## BACKGROUND

In May 1999, Petitioner, along with accomplices, robbed and assaulted Ray LaBonte, and, in a separate incident on the same night, robbed and killed Shayne Worcester. After a trial on charges arising from these acts, a San Francisco Superior Court jury found Petitioner guilty of felony murder with special circumstances, Cal. Pen. Code §§ 187 & 190.2(a)(17)(A); assault with a deadly weapon, id. § 212(c); two counts of robbery, id. § 212.5; and possession of a firearm by a felon, id. § 245(a)(2). The trial court sentenced Petitioner to life without the possibility of parole for the felony murder conviction, two upper-term five-year sentences for the robbery convictions, a four-year term for the assault conviction, and eight months for possession of a firearm by a felon, and stayed sentencing on the other convictions. Petitioner appealed. The California Court of Appeal for the First Appellate District affirmed the judgment.

(Ans., Ex. 9 at 1–2.) The California Supreme Court denied Petitioner's petition for review. (Id., Ex. 11.) Petitioner filed state habeas petitions, all later denied, in the California superior, appellate and supreme courts.[1] (Pet. at 4–5.)

Evidence presented at trial shows that Petitioner, along with accomplices Tremayne Collier, Santese Edwards, and Willie Kennedy, committed two robberies and a murder. Kennedy, who had his rifle with him, and Collier drove in Collier's car from Richmond to San Francisco. The pair picked up Petitioner and Edwards. The four "discussed a plan to commit a robbery and drove to the Marina District" in San Francisco. Before reaching the Marina District, the four saw LaBonte walking on the sidewalk. Petitioner and Edwards stepped out of the car and robbed LaBonte, while Collier and Kennedy drove around the block. During the robbery, Petitioner struck LaBonte with the gun, fracturing his jaw in several places, and knocking him unconscious. (Ans., Ex. 9 at 3.)

Later that evening, Petitioner and Collier encountered Christopher Farley and Worcester in the Marina District. Petitioner and Collier started yelling and running toward Farley and Worcester. Farley ran, and then looked back to see Worcester face down on the ground, with Petitioner and Collier standing over him:

> One of them said something like, "I want your money," and Worcester replied to the effect of "It's in my pocket. Take it." One or both of the assailants went through Worcester's pockets and appeared to pull out Worcester's wallet. Farley saw the arm of one of the assailants rise up within a few feet of Worcester's upper body, and then heard two or three popping sounds. The robbers ran off. Farley ran to Worcester and saw he was covered in blood. Paramedics took Worcester to the hospital, where he died the next morning of multiple gunshot wounds. Three slugs were recovered from his body. The cause of Worcester's death was two bullet wounds in his brain; a third bullet wounded his left shoulder.

(Id. at 4–5.)

Petitioner and Collier were tried separately. Edwards and Kennedy pleaded guilty to lesser charges, and both testified against Petitioner at trial. (Id. at 2.)

---

[1] The Court regards the opinion of the state appellate court on direct review of Petitioner's case as the last reasoned decision. The parties did not submit a copy of the superior court's ruling on Petitioner's state habeas petition, and the appellate and supreme courts issued summary habeas petition denials.

As grounds for federal habeas relief, Petitioner alleges that (1) the admission of evidence of an unrelated robbery violated his rights to due process and a fair trial; (2) his Confrontation Clause rights were violated by police inspector Wynkoop's testimony; (3) his rights to due process and a fair trial were violated by the prosecution's failure to disclose material impeachment evidence; (4) the failure to require the jury to agree unanimously whether Petitioner was a direct perpetrator or an aider and abettor violated his Sixth and Fourteenth Amendment rights, see Apprendi v. New Jersey, 530 U.S. 466 (2000); (5) the admission of a photograph of the victim violated Petitioner's rights to due process and a fair trial; (6) the imposition of the upper term sentence on the robbery counts violated the Apprendi rule; and (7) there was cumulative error.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but

3

unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

**I.      Admission of Separate Act and Statement Evidence**

Petitioner claims that the trial court violated his rights to due process and a fair trial by admitting evidence of a robbery ("McCready robbery") Petitioner had committed nearly a year after he committed the crimes at issue here. Specifically, Petitioner contends that the evidence constitutes impermissible character evidence. (Pet. at 9–10.) Petitioner further claims that the admission of a statement he made to the police regarding the McCready robbery violated his constitutional rights. (Id. at 10.) The state appellate court rejected this claim, finding that evidence of the McCready robbery was admissible to show intent. (Ans., Ex. 9 at 16.)

In April 2000, Petitioner, along with two other men, beat and robbed Ledia McCready. McCready suffered three bruised, and one broken, ribs, and other injuries. When asked about the robbery by police investigators, Petitioner stated that he was at the scene, but did not participate, and nor did he intervene because he didn't "give a fuck" unless a situation involved one of his "folks." Petitioner pleaded guilty to assault in connection with the McCready robbery. At the Worcester murder trial, the trial court, upon a motion by the prosecutor, admitted evidence of the robbery and the statement. The prosecutor sought to admit this evidence because it "was probative of [Petitioner's] modus operandi and 'depraved intent' in the charged offenses." Both the trial court and the prosecutor instructed the jury that the McCready evidence was to be used solely for the question of intent. (Ans., Ex. 9 at 12–14, 19.)

The admission of evidence is not subject to federal habeas review unless a specific

1 constitutional guarantee is violated or the error is of such magnitude that the result is a denial
2 of a fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021,
3 1031 (9th Cir. 1999). As to whether a constitutional guarantee has been violated, the Supreme
4 Court has left open the question of whether admission of propensity evidence violates due
5 process. Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). Based on the Supreme Court's
6 reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due
7 process right concerning the admission of propensity evidence — such as the McCready robbery
8 — is not clearly established as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860,
9 866–67 (9th Cir. 2006).

As to the question of the magnitude of the error, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process such that petitioner was denied a fundamentally fair trial. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). The prosecutor sought to admit evidence of the McCready robbery conviction in the hopes that the similarity between the crimes would show the jury that Petitioner could have the intent and the knowledge to commit the LaBonte and Worcester crimes. As the state appellate court emphasized, both crimes involved the Petitioner and several accomplices, helpless victims who were strangers and walking on the streets, who were battered and assaulted "far beyond what was necessary to perpetrate the robbery." (Ans., Ex. 9 at 16.) Because it was permissible for the jury to infer from the crimes' similarities that Petitioner had the knowledge and intent to commit the charged crimes, the Court cannot say that Petitioner's constitutional rights were violated.

As to Petitioner's statement to police, the Court cannot say that its admission deprived Petitioner of a fundamentally fair trial. First, this Court must assume that the jurors followed the trial court's instructions they must use the evidence solely as to the issue of knowledge and intent. See Richardson v. Marsh, 481 U.S. 200, 206 (1987). The prosecutor moved for its admission on the grounds that it revealed Petitioner's indifference toward strangers, which the prosecutor described thus: "You mean nothing to me because I don't care about you." (Id. at

13.) Because it was permissible for the jury to infer that Petitioner had a cold indifference to strangers, as evidenced by his admission that he did not intervene to protect McCready because he did not care, the Court cannot say that the admission of the statement violated Petitioner's rights.

Furthermore, Petitioner has not shown that this evidence, even if its admission was error, had "'a substantial and injurious effect' on the verdict.'" Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (9th Cir. 1993). There was strong evidence supporting Petitioner's guilt, which included several eyewitness identifications and the testimony of accomplices. Based on this record, the Court cannot say that this error had a substantial and injurious effect on the verdict. Accordingly, the Court DENIES Petitioner's claims regarding the admission of evidence of the McCready robbery.

## II.   Inspector Wynkoop's Testimony

Petitioner claims that his Confrontation Clause rights, as they are articulated in Crawford v. Washington, 541 U.S. 36 (2004), were violated when police inspector Wynkoop testified about a hearsay statement made by a confidential informant. (Pet. at 11.) The state appellate court rejected this claim, finding that Crawford did not apply, and that the trial court took adequate steps to cure whatever possible harm the statement may have caused. (Ans., Ex. 9 at 27, 30.)

During his investigation, Inspector Wynkoop had interviewed a confidential informant, "Bobby," a woman who was close to Kennedy, one of Petitioner's accomplices. In addition to her statements, Bobby gave Wynkoop a photograph of Petitioner, who, Bobby said, was responsible for the killing. In his opening statement, the prosecutor, with the permission of the trial court, informed the jury that Wynkoop had interviewed Bobby:

> Then in . . . September of '99, the police learn that it may be helpful to meet with [Bobby]. . . they didn't know who Bobby was . . . [¶] After that meeting, the police had a photograph from Bobby of [Petitioner], a torn photograph. And they leave the meeting with Bobby. But they have this torn photograph. You'll see it. We still have it. Of [Petitioner].

1  (Ans., Ex. 9 at 24.) (emphases added).  This photograph was admitted at trial, and had been
2  displayed to the jury and identified by two witnesses before Wynkoop testified.  When asked by
3  the prosecutor whether Bobby had given him anything tangible at the meeting, Wynkoop stated,
4  "She gave me a photograph of an individual that she said was responsible for the killing."  Trial
5  counsel moved for a mistrial.  The trial court denied the motion on the grounds that nothing in
6  Wynkoop's testimony had linked Bobby's photograph with the <u>torn</u> photograph mentioned by
7  the prosecutor in his opening statement and which was shown to the jury.  The trial court
8  emphasized that Wynkoop had said "photograph," rather than "torn photograph." The trial court
9  then instructed the jury to disregard entirely Wynkoop's testimony regarding his meeting with
10 Bobby.  (<u>Id.</u> at 24–25.)

11  As an initial matter, the Court agrees with the state appellate court that this is not a
12 <u>Crawford</u> claim.[2]  The Court, then, will consider whether this error had "'a substantial and
13 injurious effect' on the verdict.'"  <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting
14 <u>Brecht</u>, 507 U.S. at 623).

15  The Court concludes that whatever possible prejudice Wynkoop's statement may have
16 created was cured by the trial court's actions.  First, the trial court issued a careful curative
17 instruction.  Jurors are presumed to follow their instructions.  <u>See</u> <u>Marsh</u>, 481 U.S. at 206.
18 Second, the possible prejudice effect, as the trial court reasoned, was weakened by the fact that
19 Wynkoop's testimony did not link Petitioner directly with the photograph that had already been
20 seen by the jurors.

21  Furthermore, judging from the strong evidence against Petitioner apart from Bobby's
22 statement, which included several eyewitness identifications and the testimony of accomplices,
23 the Court cannot say that this error had a substantial and injurious effect on the verdict.  <u>Brecht</u>,
24 507 U.S. at 623.  Accordingly, the Court DENIES Petitioner's claim.

---

[2] "In <u>Crawford</u>, the jury was permitted to consider testimonial hearsay in deciding whether the defendant was guilty.  Here, the jury was precluded from considering testimonial hearsay in deciding [Petitioner's] guilt." (Ans., Ex. 9 at 27.)

7

### III. Alleged Failure to Disclose Evidence

Petitioner claims that the prosecutor failed to comply with disclosure requirements announced in Brady v. Maryland, 373 U.S. 83, 87 (1963), when he failed to disclose to the defense a police report ("Ridgeway report") of an interview by Inspector Ridgeway and Kennedy. (Pet. at 14.) The state appellate court rejected this claim, finding that the Ridgeway report "merely reflected Ridgeway's recollections about the interview with Kennedy," and that the prosecutor had "provided [Petitioner] with the best evidence of what Kennedy really said — the actual audiotape of the interview." (Ans., Ex. 9 at 35.) The state appellate court also concluded that though the Ridgway report would provide the defense with some impeachment evidence against Kennedy, other impeachment evidence had been admitted at trial. (Id. at 34–35.)

Petitioner was convicted and sentenced in May 2004. On June 28, 2004, the prosecution became aware of Ridgeway's supplemental police report. Audiotapes of the Ridgeway-Kennedy interview had been timely disclosed to the defense. (Id. at 32.) In his motion to recall his sentence, Petitioner contended that "most of the audiotape is inaudible," thereby making the Ridgeway report significant to his defense. (Id.) In the Ridgeway report, Kennedy states that Petitioner was merely present at the Worcester murder. At trial, Kennedy testified that Petitioner admitted to killing Worcester. Petitioner contends that this discrepancy could have been used to impeach Kennedy's testimony. (Pet. at 15.)

If a defendant so requests, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment." Brady, 373 U.S. at 87. Put differently, to establish a Brady violation, the defendant must show that exculpatory or impeaching evidence was suppressed by the state, either willfully or inadvertently, resulting in prejudice. Morris v. Ylst, 447 F.3d 735, 741 (9th Cir. 2006).

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

8

U.S. v. Bagley, 473 U.S. 667, 682 (1985).

Petitioner's claim fails. Trial counsel had possession of the best and most immediate evidence of the Kennedy interview, viz., the audiotapes of the interview themselves, where the impeachment evidence was readily available, despite the flawed audio quality of the tapes. The Court notes that despite the poor audio quality of the tapes, trial counsel heard sufficient information on the tapes, and read enough of the transcript of the interview, to conduct an apparently adequate cross-examination of Kennedy. (Ans., Ex. 9 at 35.) It also appears that Petitioner had a transcript of the interviews. (Id. at 36.) On this record, the Court DENIES Petitioner's claim.

**IV.  Unanimity Instruction**

Petitioner claims that the trial court violated his jury trial rights under Apprendi v. New Jersey, cited above, when it failed to instruct the jury that it must be unanimous on whether Petitioner was guilty as the direct perpetrator, or guilty as an aider and abettor. (Pet. at 17.) The state appellate court rejected this claim, finding no violation of state or federal rights. Citing People v. Majors (1998) 18 Cal.4th 385, 408, the state court reasoned that the California Supreme Court has specifically held that jurors need not unanimously decide whether a defendant is guilty as a direct perpetrator or as an aider and abettor, and that nothing in Apprendi and its progeny changed that.

This Court agrees. A jury need not decide unanimously how the defendant committed the act charged in the indictment. The Supreme Court explained in Schad v. Arizona that "Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed." 501 U.S. 624, 631 (1991); see also People v. Millwee, 18 Cal. 4th 96, 160 (1998) ("It is settled . . . that unanimity as to the theory under which a killing is deemed culpable is not compelled as a matter of state or federal law. Each juror need only have found defendant guilty beyond a reasonable doubt of the single offense of first degree murder as defined by statute and charged

9

in the information.").

The Apprendi line of cases applies to sentencing. In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The "statutory maximum" discussed in Apprendi is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant. Blakely v. Washington, 542 U. S. 296, 303–04 (2004).

Both aiders and abettors and direct perpetrators are liable as principals in the commission of a crime. People v. Calhoun, 40 Cal. 4th 398, 401 (2007). Petitioner therefore would not have been subjected to a greater sentence if, for example, the jury had found that he was a direct perpetrator rather than an aider and abettor. Because the difference in this factual determination did not increase the penalty Petitioner faced, Apprendi does not hold that he was entitled to a unanimous jury finding on whether he committed this crime as a direct perpetrator or as an aider and abettor. Accordingly, the Court DENIES Petitioner's claim.

## V.     Admission of Photograph

Petitioner claims that the trial court's admission of a photograph of Worcester violated his right to due process as it was highly prejudicial. (Pet. at 19.) The state appellate court rejected this claim, finding that even if the photograph was admitted in error, such alleged error was harmless. (Ans., Ex. 9 at 39.)

The trial court admitted a photograph picturing Worcester and Farley dressed in wedding clothes. The prosecution sought to admit the photograph because it showed that Farley and Worcester were friends, and therefore buttressed the believability of Farley's testimony regarding why Worcester was in San Francisco on the day of the killing and why Farley was present. (Id. at 38.)

This Court concludes that even if the photograph was admitted in error, Petitioner has not shown that the photograph's admission had "a substantial and injurious effect on the jury's

verdict." Brecht, 507 U.S. at 623. Though the photograph may have caused the jurors to feel sympathy with the victim, Farley's eye-witness testimony concerning Worcester's shooting and death would have caused an even more intense reaction. On this record, the Court DENIES Petitioner's claim.

**VI.    Sentence**

Petitioner claims that the trial court's imposition of the upper term sentence for the two robbery convictions and for the assault conviction violated his Sixth Amendment rights. (Pet. at 20.) The state appellate court disposed of this claim on state law grounds, law that has since been invalidated by the U.S. Supreme Court. (Ans., Ex. 9 at 40.)

The trial court's stated reasons for imposing the upper terms for these three convictions were that (1) the crime involved great violence disclosing a high degree of cruelty, viciousness, and callousness, (2) the manner in which the crimes were carried out indicates planning, and (3) Petitioner engaged in violent conduct which indicates a danger to society. (Ans., Ex. 4EE at 3456.)

Cunningham, on which Petitioner bases his claim, is the progeny of Apprendi, cited above. In Cunningham, the Supreme Court applied Apprendi's reasoning to California's determinate sentencing law ("DSL"). The Court found such sentencing scheme violated the Sixth Amendment because the DSL allowed the sentencing court to impose an elevated, or upper, sentence based on aggravating facts that the trial court found by a preponderance of the evidence, rather than facts found by a jury beyond a reasonable doubt. 549 U.S. at 274. According to the Supreme Court, "the middle [prison] term prescribed by California statutes, not the upper term, is the relevant statutory maximum." Id. at 288.

As a consequence of Cunningham, a California sentencing judge must base the imposition of an upper-term sentence on aggravating factors that are reflected in the jury's verdict or are admitted by the defendant. Id. at 288–89. Circumstances in aggravation are "facts which justify the imposition of the upper prison term." Cal. Rule of Court 4.405(d). Under California law,

the existence of a single circumstance in aggravation is sufficient to justify the imposition of the upper term. See People v. Osband, 13 Cal. 4th 622, 728 (Cal. 1996) (citation removed).

Petitioner's upper-term sentences are self-evidently beyond the statutory maximum. Also, the factors used by the trial court are not factors admitted by Petitioner, nor are they reflected in the jury's verdict. Therefore, Petitioner's sentence is unconstitutional under Cunningham.

However, Apprendi sentencing errors are subject to a harmless error analysis. Washington v. Recuenco, 548 U.S. 212, 221 (2006). Applying Brecht v. Abrahamson, 507 U.S. 619 (1993), the court must determine whether "the error had a substantial and injurious effect" on Petitioner's sentence. Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001) (internal quotation marks omitted). Under that standard, the court must grant relief if it is in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). Grave doubt exists when "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Id. at 435.

Applying these legal principles to the instant matter, the Court concludes that the error was harmless. In sum, sufficient evidence exists in the record to support the state appellate court's affirmation of the trial court's application of two of the aggravating factors to Petitioner's sentence. Those factors are that the crimes involved great violence, and that the manner in which the crimes were committed involved planning.

As to the first aggravating factor, eyewitness evidence indicates that after having taken LaBonte's money, Petitioner struck him with the rifle, fracturing his jaw and rendering him unconscious. Evidence also indicates that Petitioner and Collier robbed Worcester, and that, while Worcester was helpless on the ground and offering no resistance, Worcester was shot by one of them in the presence of the other. Such violent acts disclose a high degree of cruelty, viciousness, and callousness. The record discloses no exigent circumstances which might explain such acts. On this evidence, the Court is not in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. Petitioner is not entitled

to habeas relief on this claim.

As to the second factor, the manner in which the crime was committed indicates planning. On the evidence presented at trial — the picking up of the accomplices, the stated plan to rob people, their being armed, their scouting for possible victims — the Court is not in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. Petitioner is not entitled to habeas relief on this claim.

Petitioner's claim is DENIED.

**VII.  Cumulative Error**

Petitioner contends that errors committed by the trial court, the prosecutor, and trial counsel, taken in the cumulative, deprived him of a fair trial. (Pet. at 22.) The state appellate court did not address this claim in its written opinion.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir. 2003). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

Petitioner's claim must fail. Whatever constitutional errors occurred at trial were addressed above, and found not prejudicial. After a review of these claims as a whole, the Court concludes that whatever errors occurred, even if taken in the cumulative, do not rise to the level of a constitutional violation. Accordingly, the Court DENIES Petitioner's claim.

**CONCLUSION**

The Court concludes that the state court's adjudication of the matter did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated: August 7, 2009

SUSAN ILLSTON
United States District Judge